**In the Matter of OUTRIGGER CLUB, INC., Biscayne South, Inc., 13499 Corporation, Inc., Harbor Edge Yacht and Tennis Club, Inc., Debtors.**

**Bankruptcy Nos. 77–171–Bk–NCR–B, 78–988–Bk–JAG–B, 78–989–Bk–WMH–B and 79–864–Bk–SMA–B.**

United States Bankruptcy Court, S. D. Florida.

Feb. 13, 1981.

As Amended March 4, 1981.

See also, Bkrtcy., 6 B.R. 78.

Leo Greenfield, North Miami, Fla., for Arch Creek Properties, B & G Corp. and Harry Siegel.

Arky, Freed, Stearns, Watson & Greer, Miami, Fla., Levy & Erens, Chicago, Ill., for objectors.

## MEMORANDUM DECISION—REJECTION OF MARINA LEASE AND DENIAL OF REHEARING OF CONFIRMATION ORDER

THOMAS C. BRITTON, Bankruptcy Judge.

The debtors have moved for rehearing of the Order Confirming Joint Plan of Reorganization entered January 12. (C. P. No. 1335). Lifetime, a mortgagee creditor, seeks an order evicting the tenant-manager of the Outrigger Marina. (C. P. No. 1342). The tenant-manager, Arch Creek B & G Corporation, has responded to the application for eviction. (C. P. No. 1353a). The debtors' attorney represents Arch Creek and Harry Siegel in these two related matters. The matter was heard on February 9.

I deny reconsideration of the Confirmation Order and grant the relief sought by Lifetime.

The circumstances pertinent to these two issues are as follows. The Joint Plan as confirmed provides for the rejection of certain contracts, including a May 22, 1975 lease and subsequent assignment to Harry Siegel and a second lease dated April 11, 1978 by the debtors to Harry Siegel of the Outrigger Marina. The Act, § 116(1), authorizes such a provision in a Chapter X plan.

Rejection of these two leases is opposed on two principal grounds. It is argued first that, except under circumstances not present here, a lease *from* the debtor to another can never be rejected under § 116(1). The point is discussed at length in 6 *Collier on Bankruptcy* (14th Ed.) ¶ 3.24[1.-1] and no useful purpose would be served by a repetition here. That discussion recognizes that such a lease may be rejected and the lessee may be deprived of possession not because of the rejection of an executory contract but "because of the superior rights of the mortgagee," where the lease is subordinate to the mortgage. Ibid. pages 603–604; *Matter of Hotel Governor Clinton, Inc.*, 2 Cir. 1938, 96 F.2d 50, cert. den. 305 U.S. 613, 59 S.Ct. 72, 83 L.Ed. 390. As stated by the editors:

"Since a plan of reorganization can deal with secured claims, and a junior but valueless lien can be eliminated, the estate created by a lease expressly subordinate to a mortgage can be wiped out where the value of the property is less than the mortgage indebtedness."

Those are the facts here. The earlier lease was by stipulation terminated on June 20, 1980. Mortgagees' Exhibit 4. Arch Creek can claim no right under that lease. The later lease was executed after the debtor's mortgage to Miami National Bank which expressly subordinated future leases of more than five years to the mortgage. The lease in question runs 30 years.

It is true, as the objectors argue, that the Miami National Bank mortgage is for $4.5 million and the total Outrigger property is worth $13.5 million. However, I take notice of the fact that the Bank mortgage is secured by the marina and certain other commercial property and the appraisal accepted by this court in valuing the outrigger property allocated a value to the marina and commercial property far less than the balance owed the Bank. I accept that valuation.

The objectors insist that *Matter of Minges*, 2 Cir. 1979, 602 F.2d 38 recedes from *Governor Clinton*. I disagree. The lease in *Minges* was not terminable upon foreclosure. Ibid., at page 40. The essence of *Governor Clinton* is that a lease, junior to an undersecured mortgage and therefore valueless, can be eliminated in bankruptcy just as it could in foreclosure. The mortgagee in *Minges* was expressly precluded from terminating the lease in foreclosure except on the lessee's default. It is arguable, as is

noted in *Minges* (at page 44), whether a mortgagee can improve its position as to a lease in bankruptcy, however, it should not be arguable that a mortgagee in a bankruptcy liquidation plan retains a right it would certainly have in foreclosure.

The objectors' remaining ground is that by the terms of the contract between them, the mortgagees have agreed not to terminate this lease unless the tenant defaults.

The objectors rely on the fact that the lease in question contains a specific provision like that in the *Minges* lease, precluding termination in the event of foreclosure. The mortgagees were not parties to the lease. It had never been approved by the mortgagees. It was, therefore, in clear contravention of the mortgage restriction against long term leases. The lease was junior to the perfected mortgage and, therefore, the lease provision in this instance is totally ineffective.

*Minges* held that there was an insufficient record and remanded for findings on the issue whether the lease was burdensome to the estate. In our case, that question does not present itself. The only creditors who will receive partial payment of their claims and, therefore, are affected by the plan are two major mortgagees, the plan proponents. All general claims are extinguished, because the assets fall far short of the mortgage debt. As a matter of understandable business judgment, the mortgagees seek the rejection of this long term lease-management agreement encumbering the marina. I find the agreement clearly burdensome to the estate.

The lease-management agreement with Arch Creek B & G Corporation is terminated and that corporation is ordered to vacate the premises forthwith.